William C. Hecht, Jr., J.
This action was brought to recover payments allegedly due under a major medical expense insurance policy. Plaintiff appeals the denial of his motion for summary judgment and dismissal of defendant’s counterclaim which sought to recover payments alleged to have been mistakenly paid to plaintiff under the policy.
The policy was issued on July 26,1960, and insured “ against loss resulting from (1) sickness of the insured, contracted and commencing while this policy is in force ”. It contained an ‘1 incontestable ’ ’ clause which provides as follows:
“After this policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the application.
“No claim for loss incurred commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.” The second paragraph of the foregoing clause is mandated by the Insurance Law (§ 164, subd. 3, par. [A], subpar. [2], cl. [b], added by L. of 1951, ch. 630, § 4).
In May of 1963 plaintiff sent defendant a claim statement for hospitalization and medical expenses incurred in connection with his confinement and treatment in April, 1963, for what plaintiff describes as “internal hemorrhaging”. Defendant paid $1,263.06 for these expenses. Plaintiff then submitted an additional bill for $1,001.16 for medical bills which were unpaid, alleged to be for treatment of various illnesses from the date *709 of inception of the policy through July, 1963. The details of these bills are not disclosed in the pleadings, but defendant paid $787.75 on account of this latter claim. Plaintiff claimed the balance of $213.31 due, which was reduced by the 80% coinsurance clause to $170.65. Defendant resisted this claim and counterclaimed for the $1,263.06 theretofore paid to plaintiff for expenses due to the above-noted condition, which defendant describes asa“ bleeding ulcer ’ ’.
Plaintiff admits that he was examined and treated in August, 1957, by Dr. Robert A. Newburger. Letters of Dr. Newburger written in 1961, 1963, and 1965 and attached to the pleadings are conflicting as to whether plaintiff in fact suffered an ulcer in 1957, while confirming the examination and treatment for internal bleeding.
The application for the policy, signed by plaintiff, contained the following Question 4: “Have you been disabled, or have you consulted or been treated by a physician or surgeon, within the past five years? ” In answer, plaintiff recited three operations, regular yearly check-ups and treatments for hay fever. No disclosure was made of the above-described consultation with and treatment by Dr. Newburger in 1957.
I do not condone plaintiff’s failure to make a full and frank disclosure of the fact of the consultation and treatment in order that respondent might have had the opportunity to check further with Dr. Newburger or to submit plaintiff to examination by its own physician. I am nevertheless constrained to hold that no issues of fact exist and that the counterclaim must be denied because of the above-cited “incontestable” clause of the policy.
In Apter v. Home Life Ins. Co. (266 N. Y. 333) the insurance company appealed from a judgment for the insured under a disability policy. The judgment was reversed on another ground. However, on the point here at issue, the court said, per Lehman, J. (p. 337): “ The question remains whether proof that the plaintiff had, before the policies were issued, contracted the disease of tuberculosis which has resulted in his disablement, would be relevant upon any issue which is properly raised in this action. Such proof would show that the policies are tainted by fraud. Even so, such fraud would not permit the defendant to rescind the policies, for each policy contains a provision that ‘ after this policy has been in force during the lifetime of the insured for a period of one year from the date of issue, it shall be incontestable except for non-payment of premiums.’” This is in accordance with the accepted principle that a Statute of Limitations is a statute of repose even *710 though in a specific instance it may result in an injustice. In Gregoire v. Putnam's Sons (298 N. Y. 119, 125) the court said, per Lewis, J.: “Although we may not concern ourselves with the wisdom of the Statute of Limitation last cited above (People v. Nebbia, 262 N. Y. 259, 271; Johnson v. City of New York, 274 N. Y. 411, 430), our duty is to give to that statute its intended effect as a statute of repose — designed ‘ to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. ’ (Chase Securities Corp. v. Donaldson, 325 U. S. 304, 314, supra.) The statute (Civ. Prac. Act, § 51, subd. 3) which is controlling here is a declaration of public policy governing the right to litigate; it came into our law by way of the Legislature, not through the judicial process. ‘ At times, it may bar the assertion of a just claim. Then its application causes hardship. The Legislature has found that such occasional hardship is outweighed by the advantage of outlawing stale claims. ’ (Schmidt v. Merchants Despatch Transp. Co., 270 N. Y. 287, 302, supra.) ”
Defendant may not complain of rigor or unfairness of this application of the law. It could have protected itself against á situation of this kind by incorporating in its policy the language authorized by clause (a) of the Insurance Law (§ 164, subd. 3, par. [A], subpar. [2]) which reads: “ After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two year period ” (italics supplied). In Greenhaus v. American Progressive Health Ins. Co. (33 Misc 2d 280) the policy contained both clauses (a) and (b) of the statute. As in this case, the insurer sought to avoid liability under the policy on the ground that plaintiff insured had fraudulently concealed a history of prior illness in answering a question similar to Question 4 in the instant policy. Plaintiff argued that clause (b) precluded the insurer’s defense, ‘ ‘ regardless of the specific exception in respect to ‘ fraudulent misstatements ’ specified in paragraph (a).” Plaintiff further argued that if the clauses produced an ambiguity in the policy such ambiguity must be resolved in favor of the insured and against the insurer. The court stated (p. 282): “ A close reading of both clauses shows that clause (a) discusses misstatements, biit that clause (b) discusses nonstatements. More specifically, whereas clause (a) deals with misstatements as to prior diseases or conditions affirmatively made by the insured, *711 clause (b) deals with situations where the insured said nothing as to any pre-existing disease or condition. Thus, clause (a) bars the insurer defendant from voiding or denying the claim after two years have expired, if the insured plaintiff affirmatively made a wrong statement as to any pre-existing disease or condition. But it does not bar the insurer if that wrong statement was made fraudulently, that is, with intent to deceive the company. On the other hand, clause (b) does not deal with any wrong statements, nor with any affirmative statements of any kind made by the insured, but deals only with situations where the disease or condition pre-existed and was not mentioned at all in the application. Such a situation could occur where the insured had a pre-existing disease or condition, but was not aware of it. Thus, clause (b) merely bars the insurer from voiding or denying any claim for a pre-existing disease or condition if the insured merely failed to mention it in his application.” In affirming the denial of the insured’s motion for summary judgment, the Appellate Division, Second Department, said (18 A D 2d 1076): “ In our opinion, the two-year 1 Time Limitation on Certain Defenses ’ clause, inserted in each of the policies pursuant to the requirements of the statute (Insurance Law, § 164, subd. 3, par. [A], cl. [2]), clearly reserves to the insurer the right to defend upon the ground of false and fradulent representations in the application relating to medical treatment or to the existence or nonexistence of diseases or physical conditions prior to the effective date of coverage of the policy. On the other hand, it bars defenses based on inadvertent though incorrect statements made with respect to such matters. Therefore, defendant’s defenses and its counterclaims for rescission raise issues of fact as to whether plaintiff had knowingly made false representations of material facts in order to induce defendant to issue the policies.”
In the Apter case (cited supra), the judgment for the insured was reversed on the ground that an issue of fact was created by the insurer’s allegation that the disease which caused the loss originated prior to the date of issuance of the policy. Defendant here urges a similar argument because of the language of the policy which insures against loss from sickness “ contracted and commencing while this policy is in force.” However, the policy in the After case, which was decided in 1935, did not contain the broad incontestability clause found in the instant policy and mandated by the 1951 statute. This clause provides that ‘ ‘ no claim for loss incurred commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a [nonexcliided] disease or phys *712 ical condition * * * had existed prior to the effective date of coverage of this policy.” In my view, it clearly limits the effect of the loss coverage restriction to loss incurred during the first two years.
Defendant contends finally that “ the loss for which plaintiff makes claim must be considered to have first arisen in 1957, when he was first treated for ulcers, and not when services were performed or medical bills were presented at some later date,” citing Greiper v. National Cas. Co. (1 A D 2d 806). This argument is untenable. In the Greiper case, the accident occurred during the term of the policy, but the death occurred after its termination. That has no application to the case at bar, where the loss (the medical and hospital bills) was incurred during the term of the policy.
Accordingly, the order denying plaintiff-appellant’s motion for summary judgment and for dismissal of defendant-respondent’s counterclaim should be reversed, with $10 costs, and, inasmuch as there is no defense to the claimed balance of $170.65 owing plaintiff, the motion for summary judgment should be granted.
Hofstadter., J. P., and Tilzer, J., concur.
Order reversed, etc.