■  PATRICK DONADIO, an Infant, by His Father and Natural Guardian, ROBERT DONADIO et al., Appellants, v CROUSE-IRVING MEMORIAL HOSPITAL, INC., et al., Defendants, and ROBERT H. ZIMMER et al., Respondents.—Order affirmed, without costs. Memorandum: Plaintiffs' complaint alleges medical malpractice against defendants-respondents Dr. Robert H. Zimmer and Dr. John N. Glezen based upon allegations of negligence in the care and treatment of the infant plaintiff. The record clearly establishes that defendants obstetricians' participation terminated upon delivery of the child. There is no proof of evidentiary facts sufficient to raise a triable issue of fact as against these defendants. While summary judgment is granted infrequently in negligence actions, the remedy should be granted where there is no merit to the cause of action *(Blake v Gardino,* 35 AD2d 1022, affd 29 NY2d 876). Summary judgment is proper to eliminate unnecessary expense to named litigants where no issue of a material fact is presented to justify a trial as against them *(Axlerod v Armitstead,* 36 AD2d 593; cf. *Wolfgruber v Upjohn Co.,* 72 AD2d 59). All concur, except Simons and Moule, JJ., dissent and vote to reverse and deny the motion, in the following memorandum.

Simons and Moule, JJ. (dissenting). The infant plaintiff was born 10 weeks prematurely and, after treatment for a respiratory condition became permanently blind. The infant's mother had 11 previous pregnancies, eight of which were terminated by miscarriage. Drs. Glezen and Zimmer by their own admission provided only "routine prenatal care" and delivered the child by Caesarean section when complications arose in the pregnancy. Although they provided no care for the child following the delivery, and though other named defendants provided the oxygen therapy that is alleged to have contributed to the infant's blindness, the infant plaintiff and his father brought suit against the respondents as well. Plaintiffs allege that due to the mother's unusual history of miscarriages, the doctors providing prenatal care should have taken additional measures to lower the risk of miscarriage, should have advised the parents of the risks, and provided genetic counseling or called in specialists. Since this case has not progressed beyond the pleadings stage, it is impossible to ascertain what proof will be adduced at trial. Certainly, however, the allegations of the plaintiffs and the unusual medical history of the mother raise a triable issue of fact with regard to whether her doctors should have done something other than

routine treatment. The Court of Appeals recognized the tort of negligent genetic counseling in *Becker v Schwartz* (46 NY2d 401). If plaintiff can prove her doctors negligently failed to provide or suggest adequate genetic counseling, they may recover for medical malpractice. In refusing to recognize this theory of liability, the majority ignore *Becker* and this court's own decision in *Karlsons v Guerinot* (57 AD2d 73 [negligence in failing to advise of available diagnostic testing and/or risks of pregnancy states a cause of action]). The majority make much of the fact that postnatal treatment by other physicians may have been a more substantial factor in the infant's malady. Even if plaintiff's likelihood of recovery at trial against the gynecologists is more remote as against the other doctors, that is no ground for dismissing the cause of action. *Karlsons,* as limited by *Becker,* is clear authority for this theory of liability. In *Becker v Schwartz* (46 NY2d 401, *supra)* the Court of Appeals limited the recoverable damages under a genetic counseling negligence theory to the pecuniary expenses for the care and treatment of the infant (46 NY2d 401, 412, *supra).* This contrasts with the fuller complement of damages recoverable under traditional theories of medical malpractice (cf. *Toth v Community Hosp. at Glen Cove,* 22 NY2d 255; *Pike v Honsinger,* 155 NY 201). The Court of Appeals has not yet passed on the intriguing *Dole v Dow* issues that may arise when a case, such' as this one, presents an admixture of both traditional and genetic counseling theories of malpractice. To grant summary judgment in a case such as this, merely on speculation that recovery at trial is remote, is to misconstrue the court's function in passing on motions for summary judgment. Summary judgment is available in negligence actions where there are, indeed, no triable issues of fact *(Regnal Realty Corp. v McBride Transp.,* 25 AD2d 703), but if a doubt exists, summary judgment is improper *(Phillips v Kantor & Co.,* 31 NY2d 307; *Falk v Goodman,* 7 NY2d 87). Finally, while defendants complain that the pleadings do not specify with precision the nature of the complaint against them, the proper remedy is to grant leave to amend the complaint or serve a supplemental bill of particulars *(Dampskibsselskabet Form A/S v Thomas Paper,* 26 AD2d 347 [amdt ordered on app]; see *Karlsons v Guerinot,* 57 AD2d 73, 83; 6 Carmody-Wait 2d, § 39:13; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.10; *Babtkis Assoc. v Tarazi Realty Corp.,* 34 AD2d 754). Accordingly, since we believe the mother's unusual medical history of miscarriages raises a triable issue of fact concerning whether her doctors should have provided more than routine prenatal care, we would reverse the order of summary judgment and deny the. motion. (Appeal from order of Onondaga Supreme Court—summary judgment.) Present—Cardamone, J. P., Simons, Callahan, Doerr and Moule, JJ.